**UNITED STATES of America**

v.

**William J. KITSCH**

**No. CRIM.A. 03–594–1.**

United States District Court, E.D. Pennsylvania.

March 2, 2004.

**658**

Robert K. Reed, United States Attorney's Office, Philadelphia, PA, for U.S.

David M. Kozlow, Federal Defenders' Association, Philadelphia, PA, for William J. Kitsch.

### MEMORANDUM

DALZELL, District Judge.

On September 16, 2003, the grand jury returned an indictment against William J. Kitsch that charged him with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (2003)[1] and one count of being a violent felon in possession of body armor in violation of 18

U.S.C. § 931(a)(1) (2003).[2] Kitsch has moved to dismiss the indictment because he believes that Congress lacks the constitutional authority to regulate the conduct with which he is charged. The Government, on the other hand, contends that the Commerce Clause authorizes Congress to regulate such conduct.

The Commerce Clause gives Congress the power "[t]o regulate Commerce ... among the several States." U.S. Const. art I, § 8, cl. 3. As views on the limits of congressional power have evolved throughout our history, the judiciary has struggled to construe these simple words. *Compare A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 546, 55 S.Ct. 837, 850, 79 L.Ed. 1570 (1935) (holding that Congress could not regulate activities that affect interstate commerce indirectly) *with NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 37, 57 S.Ct. 615, 624, 81 L.Ed. 893 (1937) (departing from the distinction between direct and indirect effects on interstate commerce and concluding that Congress could regulate activities that "have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions").

Over almost sixty years since *Jones & Laughlin Steel Corp.*, the Supreme Court, with few exceptions, interpreted the Commerce Clause rather expansively, upholding many exertions of legislative authority. In *Scarborough v. United States*, 431 U.S.

---

**1.** Section 922(g)(1) makes it a crime for "any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce ... any firearm or ammunition."

**2.** Section 931(a)(1) declares that "it shall be unlawful for a person to purchase, own, or possess body armor, if that person has been

convicted of a felony that is ... a crime of violence (as defined in section 16)." "Body armor" is defined as "any product sold or offered for sale, in interstate or foreign commerce, as personal protective body covering intended to protect against gunfire, regardless of whether the product is to be worn alone or is sold as a complement to another product or garment." *See* 18 U.S.C. § 921(a)(35) (2003).

563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), for example, the Court faced a challenge to former 18 U.S.C. § 1202(a) (repealed 1986)—a statute that, like the current § 922(g)(1), criminalized a felon's possession of a firearm.[3] Scarborough had been convicted of violating § 1202(a) even though the Government had introduced evidence showing only that his firearm once had traveled in interstate commerce. The Supreme Court affirmed the conviction, concluding simply that "Congress intended [for a defendant to be convicted when the firearm had] no more than a minimal nexus" with interstate commerce, *see Scarborough*, 431 U.S. at 577, 97 S.Ct. at 1970. Most significantly for purposes of this case, the Court's focus on congressional intent, without mention of the possible constitutional issues, underscores how broadly it understood Congress's power to regulate interstate commerce. It seemed self-evident to the *Scarborough* Court that Congress could prohibit a felon from possessing firearms, so long as the firearms had just a "minimal nexus" with interstate commerce.

The Court continued to interpret the Commerce Clause expansively in the years after *Scarborough*, but eventually, in the seminal case of *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), it signaled a renewed interest in identifying the outer reaches of the commerce power. *Lopez* involved a facial challenge to the Gun–Free School Zones Act of 1990 ("GFSZA"), which made it illegal "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." *Id.*, 514 U.S. at 551, 115 S.Ct. at 1626 (quoting 18 U.S.C. § 922(q)(1)(A) (1998)). After reviewing

several important precedents, the Court summarized its Commerce Clause jurisprudence by explaining that Congress could regulate (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce"; and (3) "those activities that substantially affect interstate commerce." *Id.*, 514 U.S. at 556–59, 115 S.Ct. at 1629–30. Because possessing a gun in a school zone did not fall into any of these three categories, the Court concluded that Congress lacked the constitutional authority to enact the GFSZA. In striking down the law, it emphasized that—unlike the statute at issue in *Scarborough*—the GFSZA "contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affect[ed] interstate commerce." *Id.*, 514 U.S. at 561, 115 S.Ct. at 1631.

A few years later, the Supreme Court used *Lopez* as a roadmap for its analysis of the Violence Against Women Act of 1994 ("VAWA"). *See United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). VAWA created a private cause of action against people "who commit[ ] a crime of violence motivated by gender," and thus differed significantly from the criminal statutes at issue in *Scarborough* and *Lopez*, but *Morrison* nevertheless remains relevant to this case for two reasons. First, *Morrison* again demonstrated the Court's reinvigorated commitment to enforcing constitutional limits on legislative power because the Court concluded that Congress could not "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.*, 529 U.S. at 617, 120 S.Ct. at 1754. Second, the Court noted that "a jurisdictional element

---

**3.** Section 1202(a)(1) made it a crime for "[a]ny person who ... has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony ... [to] receive[ ], possess[ ], or transport[ ] in commerce or affecting commerce ... any firearm."

may establish that [a statute] is in pursuance of Congress' regulation of interstate commerce." [4] *Id.*, 529 U.S. at 612, 120 S.Ct. at 1751.

Only days after deciding *Morrison*, the Court interpreted 18 U.S.C. § 844(i), which makes it a crime to "damage[ ] or destroy[ ] ... by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." *See Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000). Ultimately, the Court in *Jones* held that § 844(i) did not cover the arson of an owner-occupied residence not used for any commercial purpose. *Id.*, 529 U.S. at 859, 120 S.Ct. at 1912. Although the Court recognized that the case raised "constitutional question[s]," *id.*, 529 U.S. at 858, 120 S.Ct. at 1912, its opinion focused on § 844(i)'s inclusion of the word "use" to avoid those questions. *Jones*, in short, required the Court to construe a statute, not to rule on the extent of Congress's power under Article I to regulate interstate commerce.

The Court's holdings in *Lopez* and *Morrison*—and, to a lesser extent, in *Jones*—emphasized the limits of the commerce power in ways unseen since the famous "switch in time." In many ways, they raised more questions than they answered. Did *Lopez* signal a sea change in Commerce Clause jurisprudence that would require reevaluation of previous generations' precedents? Or was its meaning more modest, perhaps only reminding Congress that statutes that failed to recognize jurisdictional limitations were suspect?

Our Court of Appeals resolved these questions—at least in the context now before us—in *United States v. Singletary*,

268 F.3d 196 (3d Cir.2001), a case challenging § 922(g)(1) on an identical basis to the one that Kitsch advances here. Judge Fuentes's opinion analyzed the Supreme Court decisions that we have just discussed and ultimately concluded that § 922(g)(1) remained constitutional, even in the wake of *Lopez, Morrison*, and *Jones*. The Court of Appeals also reaffirmed the vitality of *Scarborough* with its holding that proof that a firearm "had traveled in interstate commerce, at some time in the past, was sufficient to satisfy the interstate commerce element" in the statute. *Id.* at 205. According to the Court of Appeals, however, *Jones* "did not expand *Scarborough* to mean that a piece of property, used in interstate commerce at some time in the past, gave its current intrastate use a sufficient nexus to interstate commerce to fall within the ambit of the arson statute." *Id.* at 204.

In many ways, *Singletary* controls our resolution of this case. The Court of Appeals rejected a facial challenge to § 922(g)(1)'s constitutionality, so we must also reject Kitsch's challenge to that statute. Moreover, the *Singletary* opinion explicitly recognized that the Government, to secure a conviction under § 922(g)(1), need only prove that a firearm once traveled in interstate commerce. *See id.* at 205.

With regard to Kitsch's § 931(a)(1) challenge, *Singletary* does not directly control, but it does offer helpful guidance. The critical distinction between the statutes struck down in *Lopez* and *Morrison* and the statutes that Kitsch challenges here is that the former lack jurisdictional elements while the latter criminalize only possession of a firearm "in or affecting commerce," § 922(g)(1) or of body armor "sold or offered for sale, in interstate or

---

4. Though *Morrison* did not explicitly note it, VAWA did not limit private causes of action to those cases of gender-motivated violence that

affect interstate commerce. *See* 42 U.S.C. § 13981 (2000).

foreign commerce," § 921(a)(35). While the statute in *Jones* had a jurisdictional element, the Supreme Court did not find that statute unconstitutional. Indeed, we are aware of no recent case where the Court has sustained a facial challenge to a law containing a jurisdictional element, and we would be surprised to learn that a court could strike down an act of Congress that carefully limited its reach to activities within that body's commerce power.

Although we find § 931(a)(1) constitutional (and thus we will deny Kitsch's motion to dismiss the indictment), we must also point out that Congress's mere inclusion of a jurisdictional element in a statute will not necessarily make all applications of that statute constitutional.[5] If *Morrison* makes anything clear, it is that the judiciary will not elevate form over substance and uncritically uphold every statute where Congress declares that conduct has an attenuated effect upon interstate commerce. Similarly, we must interpret § 921(a)(35) in a way that respects the "limitations on the commerce power [that] are inherent in the very language of the Commerce Clause," *Lopez,* 514 U.S. at 553, 115 S.Ct. at 1627, ever mindful that *Jones* chose not to expand *Scarborough*'s holding from the context of firearms possession to that of arson, *see Singletary,* 268 F.3d at 204. To resolve Kitsch's motion today, we need not decide what the Government will have to prove at trial to establish that body armor was "sold or offered for sale, in interstate or foreign commerce." *See* § 921(a)(35).

### ORDER

AND NOW, this 2nd day of March, 2004, upon consideration of defendant's motion to dismiss the indictment (docket entry # 21) and the Government's response thereto, and in accordance with the accompanying Memorandum, it is hereby ORDERED that defendant's motion is DENIED.

---

5. This is the point we made in *United States v. Coward,* 151 F.Supp.2d 544 (E.D.Pa.2001), which explained why, in particular factual settings, *Scarborough* may implicate *Morrison* questions that the *Jones* approach avoids. Thus, even if *Coward* were a Supreme Court decision, it would not be authority for supporting any *Lopez*-type facial challenge.