**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><i>Plaintiff-Appellee,</i><br><br>v.<br><br>CEDRICK BERNARD ALDERMAN,<br><i>Defendant-Appellant.</i></td><td>No. 07-30186<br><br>D.C. No.<br>CR-06-00117-001-<br>JCC<br><br>OPINION</td></tr>
</table>

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted
March 12, 2008—Seattle, Washington

Filed May 12, 2009

Before: Betty B. Fletcher, M. Margaret McKeown,
Richard A. Paez, Circuit Judges

Opinion by Judge McKeown;
Dissent by Judge Paez

## COUNSEL

Helen J. Brunner, Assistant United States Attorney, Seattle, Washington for the plaintiff-appellee.

Brian Tsuchida, Assistant Federal Public Defender, Seattle Washington (on the brief) and Vicki Lai, Assistant Federal Public Defender, Seattle Washington (on the brief and oral argument) for the defendant-appellant.

## OPINION

McKEOWN, Circuit Judge:

This case of first impression in the Ninth Circuit requires us to consider whether Congress has the authority under the

Commerce Clause of the United States Constitution, art. I, § 8, cl. 3, to criminalize the possession by a felon of body armor that has been "sold or offered for sale in interstate commerce." 18 U.S.C. §§ 931 and 921(a)(35). Put another way, the issue is whether the sale of body armor in interstate commerce creates a sufficient nexus between possession of the body armor and commerce to allow for federal regulation under Congress's Commerce Clause authority.

In recent years, the Supreme Court has significantly altered the landscape of congressional power under the Commerce Clause. *See*, *e.g.*, *United States v. Morrison*, 529 U.S. 598 (2000) (striking down statute that provided a federal civil remedy for victims of gender-motivated violence); *United States v. Lopez*, 514 U.S. 549 (1995) (striking down federal statute regulating possession of guns in school zones). Nonetheless, the resolution to this case is found in Supreme Court and Ninth Circuit precedent that addresses a jurisdictional element nearly identical to the one that applies to § 931. *See Scarborough v. United States*, 431 U.S. 563, 575, 577 (1977) (concluding that, in the context of Title VII of the Omnibus Crime Control Act, proof that a firearm traveled in interstate commerce satisfies the required nexus between possession of the firearm and commerce); *United States v. Cortes*, 299 F.3d 1030, 1037 n.2 (9th Cir. 2002) (upholding carjacking statute and stating that "the vitality of *Scarbourough* engenders significant debate," but "[u]ntil the Supreme Court tells us otherwise . . . we follow *Scarborough* unwaveringly."). We conclude that we are bound by this precedent — absent the Supreme Court or our en banc court telling us otherwise — and that the felon-in-possession of body armor statute passes muster.

## Background

Cedrick Alderman was arrested in 2005 during a sting operation involving an attempted controlled purchase of cocaine. Officers were aware that Alderman had been previ-

ously convicted of felony robbery.[1] [*see* SER 7-9]. The arresting officer discovered that Alderman was wearing a bullet-proof vest. [SER 36]. Alderman was booked for possession of the vest and for violating the conditions of his supervision. [*See* Dkt. 33].

Because Washington state law does not criminalize felon possession of body armor, the matter was referred to the federal authorities. Alderman was indicted under 18 U.S.C. § 931(a), which makes it unlawful for a person convicted of a felony involving a "crime of violence" to possess body armor. *See* James Guelff and Chris McCurley Body Armor Act of 2002, § 11009(e)(2)(A), 18 U.S.C. § 931 (criminalizing the possession of body armor by felons as of Nov. 2, 2002).

Alderman filed a motion to suppress certain evidence.[2] He also sought dismissal of the indictment on various grounds, including that the statute was unconstitutional because its enactment exceeded Congress's authority under the Commerce Clause. [*See* ER 60-62]. The district court denied all of Alderman's motions.

Alderman entered a conditional guilty plea. [ER 17-23]. Under the plea agreement, Alderman preserved for appeal the disputed constitutionality of § 931. [*See* ER 18].[3] As part of

---

[1]Alderman had been convicted in Washington state court of robbery in the second degree and sentenced to fourteen months in prison. In addition to that charge, Alderman had been convicted of several drug charges, including possession with intent to deliver cocaine and possession of cocaine.

[2]Although Alderman's Notice of Appeal includes the district court's denial of his motion to suppress [*see* ER 15], Alderman did not raise the issue in his briefs. We agree with the Government that Alderman waived his appeal of the motion to suppress. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). [*See also* RED at 4].

[3]Alderman's Notice of Appeal states that he appeals "from the denial of [the] Motion to Suppress Evidence on June 14, 2006, and from the

the factual basis for the plea, the plea agreement included Alderman's admission that the vest had crossed state lines. Specifically, the vest was sold by the manufacturer in California to a distributor in Washington state. The distributor then sold the vest to the Washington State Department of Corrections. Nothing in the record reveals how the vest left the Department of Corrections, but it is undisputed that the vest subsequently came into Alderman's possession. [Dkt. 33]. The stipulation and factual recitation were designed to ensure that the jurisdictional element of the statute was met. *See* 18 U.S.C. § 921(a)(35) (limiting the applicability of § 931 to vests that have been "sold or offered for sale, in interstate or foreign commerce").

**Analysis**

## I.  THE STATUTE

"We review a district court's denial of a motion to dismiss an indictment on constitutional grounds *de novo.*" *United States v. Latu*, 479 F.3d 1153, 1155 (9th Cir. 2007). Under 18 U.S.C. § 931, it is a crime for a person who has been convicted of a violent felony to "purchase, own, or possess body armor." Unlike the statutes at issue in *Lopez and Morrison*, § 931 is limited by an express jurisdictional condition — the jurisdictional hook limits the reach of § 931 to "body armor" that has been "sold or offered for sale, in interstate or foreign commerce . . . ."  18 U.S.C. § 921(a)(35).

[1] Congress enacted § 931 in response to a spate of violent clashes involving heavily armored assailants and comparatively unprotected police officers. The Congressional findings cite as examples:

judgment and sentence entered on May 18, 2007." [ER 15]. The Notice of Appeal does not specifically mention Alderman's motion to dismiss. Neither party referenced this oversight; because Alderman's plea agreement specifically reserves his appeal right, we construe Alderman's Notice of Appeal as encompassing the denial of the motion to dismiss.

the murder of San Francisco Police Officer James Guelff by an assailant wearing 2 layers of body armor, a 1997 bank shoot out in north Hollywood, California, between police and 2 heavily armed suspects outfitted in body armor, and the 1997 murder of Captain Chris McCurley of the Etowah County, Alabama Drug Task Force by a drug dealer shielded by protective body armor.

H.R. Rep. 107-193, pt. 1, at 2.

**[2]** Confronted with the reality that "nationally, police officers and ordinary citizens are facing increased danger as criminals use more deadly weaponry, body armor, and other sophisticated assault gear," Congress concluded that a "serious threat to community safety [is] posed by criminals who wear body armor during the commission of a violent crime." *Id.* Congress further found that "crime at the local level is exacerbated by the interstate movement of body armor and other assault gear" and "existing Federal controls over [interstate] traffic [in body armor] do not adequately enable the States to control this traffic within their own borders." *Id.* In other words, as with guns and domestic strife, Congress determined that felons and body armor "are a potentially deadly combination nationwide." *U.S. v. Hayes*, — S.Ct. —, 2009 WL 436680, *7 (2009). To address this threat, Congress elected to forbid violent felons from possessing body armor that had been sold through interstate channels.

Alderman argues that Congress exceeded its authority under the Commerce Clause when it enacted this legislation. We disagree. The Supreme Court has cautioned us that "[d]ue respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *Morrison*, 529 U.S. at 607. No such showing has been made here. We opt to follow the Supreme Court's lead in *Scarborough*.

## II. UNITED STATES V. SCARBOROUGH AND RELATED CIRCUIT CASES

**[3]** We are guided in our analysis first and foremost by the Supreme Court's decision in *Scarborough*. In *Scarborough*, the Court addressed a jurisdictional element that is nearly identical to the one that limits § 931. *Scarborough*, 431 U.S. at 564 (quoting 18 U.S.C. §§ 1201-03). As we outlined in *Cortes*, the Supreme Court in *Scarborough* "considered whether proof that an illegally possessed firearm previously traveled in interstate commerce was sufficient to satisfy the nexus between possession of the firearm and commerce." 299 F.3d at 1036-37. "The Court answered affirmatively; if the government proved that Scarborough's firearms had at some time traveled in interstate commerce, a sufficiently close nexus between possession of the firearms and commerce was established." *Id.* As the Supreme Court explained it; "[T]here is no question that Congress intended no more than a minimal nexus requirement." *Scarborough*, 431 U.S. at 577. Thus, although the Court did not address the statute from a constitutional perspective, it implicitly assumed the constitutionality of the "in commerce" requirement. It is difficult to distinguish our case from *Scarborough*.

**[4]** In considering the continuing vitality of *Scarborough*, we have consistently upheld similar felon-in-possession statutes. *See* , *e.g.*, *United States v. Jones*, 231 F.3d 508, 514 (9th Cir. 2000) (upholding statute criminalizing felon's possession of a firearm because the jurisdictional hook in the statute "insures on a case-by-case basis that the defendant's actions implicate interstate commerce to a constitutionally adequate degree.") (quoting *United States v. Polanco*, 93 F.3d 555 (9th Cir. 1996)); *United States v. Hanna*, 55 F.3d 1456, 1462 (9th Cir. 1995) (quoting *Scarborough*, 431 U.S. at 575, and stating that *Scarborough* requires "only 'the minimal nexus that the firearm have been, at some time, in interstate commerce.' "); *see also Cortes*, 299 F.3d at 1037 (upholding federal carjacking statute because, taken together, the context of

the statute, congressional findings, and the requirement that the car affected have been transported in interstate commerce "ensure that carjackings covered by 28 U.S.C. § 2119 substantially affect interstate commerce.").

We are not alone in adhering to *Scarborough*. In *United States v. Patton*, the Tenth Circuit recently considered § 931 in light of *Scarborough* and the Supreme Court's post-*Lopez* Commerce Clause jurisprudence. 451 F.3d 615 (10th Cir. 2006). After conducting an exhaustive review of Supreme Court and circuit precedent, the Tenth Circuit pointed out that "[o]ther circuits have similarly continued to follow *Scarborough*" and concluded that "[a]lthough the body armor statute does not fit within any of the *Lopez* categories, it is supported by the pre-*Lopez* precedent of *Scarborough v. United States*." *Id.* at 634. The court emphasized that in *Scarborough*, the Supreme Court "assumed that Congress could constitutionally regulate the possession of firearms solely because they had previously moved across state lines." *Id.* Thus, "[b]ecause Mr. Patton's bulletproof vest moved across state lines at some point in its existence, Congress may regulate it under *Scarborough* . . . " *Id.* Two district courts that have addressed the body armor statute are in accord. *See United States v. Marler*, 402 F. Supp. 2d 852 (N.D. Ohio 2005); *United States v. Kitsch*, 307 F. Supp. 2d 657 (E.D. Pa. 2004).

**[5]** Other circuits have similarly endorsed the continuing vitality of *Scarborough*, albeit sometimes with skepticism, in decisions dealing with a variety of felon firearm statutes. *See , e.g.*, *United States v. Lemons*, 302 F.3d 769, 772-73 (7th Cir. 2002) (noting that because "*Scarborough* suggested that prior movement of the firearm in interstate commerce would suffice to meet [the jurisdictional element], we have, in the wake of *Lopez,* repeatedly rejected Commerce Clause challenges to application of the felon-in-possession statute"; as to any conflict with *Lopez*, "it is for the Supreme Court to so hold."); *United States v. Smith,* 101 F.3d 202, 215 (1st Cir. 1996) (deciding that *Scarborough*, rather than *Lopez*, applied

because of the jurisdictional hook in the statute); *United States v. Chesney,* 86 F. 3d 564, 571 (6th Cir. 1996) (adhering to *Scarborough*). Although these decisions dealt with the possession of firearms rather than body armor, we agree with the Tenth Circuit that the "prohibition on possessing body armor cannot be distinguished from the prohibitions on possessing firearms that we have upheld." *Patton*, 451 F.3d at 635.

**[6]** We decline to create a circuit split on this issue or to deviate from binding precedent. The congressional findings, the nature of the body armor statute, and the express requirement of a sale in interstate commerce, considered in combination, provide a sufficient nexus to and effect on interstate commerce to uphold § 931.

## III.   RECENT COMMERCE CLAUSE JURISPRUDENCE

Although we consider *Scarborough* as the defining case, we cannot ignore the Supreme Court's shifting emphasis in its Commerce Clause jurisprudence over the past decade. Alderman posits that *Scarborough* has been overruled by the Court's recent Commerce Clause cases. Our review of those authorities does not support this view — *Scarborough* has not been discarded. *See Hanna*, 55 F.3d at 1462 (noting that *Scarborough* continues to be viable after *Lopez*).

In *Lopez* and its progeny, the Supreme Court delineated "three general categories of regulation in which Congress is authorized to engage under its commerce power." *Gonzalez v. Raich*, 545 U.S. 1, 16 (2005). These categories include: "(1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce . . . ; and (3) activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce." *Jones*, 231 F.3d at 514 (quoting *Lopez*, 514 U.S. at 558-59) (internal quotes and alterations omitted); *see also Raich*, 545 U.S. at 33-34 (Scalia, J., concurring) (noting that for over thirty years, "our cases have mechanically recited that the Com-

merce Clause permits congressional regulation of three categories").

The "categories have never been deemed exclusive or mandatory." *United States v. Clark*, 435 F.3d 1100, 1116 (9th Cir. 2006). "The categories are a guide, not a straitjacket." *Id.* Hence, while we generally analyze cases in the framework of these three categories, we are not obligated to "jam[ ] a square peg into a round hole" — especially when that peg has already had a suitable spot of its own carved out by the Court. *Id.* at 1103.

To be sure, the first two categories are not particularly applicable here.[4] The third category described in *Lopez* "define[s] the extent of Congress's power over purely *intra*state [ ] activities that nonetheless have substantial *inter*state effects." *United States v. Robertson*, 514 U.S. 669, 671 (1995) (emphasis in original). In *Morrison*, the Supreme Court "established what is now the controlling four-factor test for determining whether a regulated activity 'substantially affects' interstate commerce." *United States v. McCoy*, 323 F.3d 1114, 1119 (9th Cir. 2003). One of these considerations is "whether the statute contains any 'express jurisdictional element.'" *Morrison*, 529 U.S. at 611. "The purpose of a jurisdictional hook is to limit the reach of a particular statute to a discrete set of cases that substantially affect interstate commerce." *McCoy*, 323 F.3d at 1124. "Such a jurisdictional

---

[4]Neither party seriously contends that § 931 can be justified under either of the first two categories. As the Tenth Circuit explained in *Patton*, because § 931 "prohibits the stationary and entirely intrastate act of possession" and "is not directed at the movement of body armor through the channels of interstate commerce . . . [§ 931] cannot be upheld under Congress's power to regulate the channels of interstate commerce." *United States v. Patton*, 451 F.3d 615, 621 (2006). Nor can the statute be understood as regulating an instrumentality or "thing in" commerce because the statute "does not protect body armor while it is moving in interstate shipment [nor] is [it] directed at the use of body armor in ways that threaten or injure the instrumentalities of interstate commerce." *Id.* at 622.

element may establish that the enactment is in pursuance of Congress' regulation of interstate commerce." *Morrison*, 529 U.S. at 612 (2000).

Unlike the statutes at issue in *Lopez* and *Morrison*, § 931 is limited by an express jurisdictional provision. Specifically, the statute regulates body armor "sold or offered for sale, in interstate or foreign commerce." *Cf. Cortes*, 299 F.3d at 1036 (concluding that a carjacking statute contained an express jurisdictional hook because it was limited to vehicles "transported, shipped, or received in interstate or foreign commerce").

Significantly, the "jurisdictional hook" in this statute is substantially different from the provision we rejected as essentially meaningless in *McCoy*, 323 F.3d at 1116. In *McCoy*, we examined a child pornography statute with a jurisdictional provision that allowed the statute to be applied to all child pornography "which was *produced using materials* which have been mailed or so shipped or transported" in "interstate or foreign commerce." *Id.* at 1116 (emphasis in original, some emphasis omitted). We noted that "the limiting jurisdictional factor [was] almost useless" because "all but the most self-sufficient child pornographers will rely on film, cameras, or chemicals that traveled in interstate commerce and will therefore fall within the sweep of the statue." *Id.* at 1125 (quoting *United States v. Rodia*, 194 F.3d 465, 473 (3rd Cir. 1999)).

By contrast, § 931 only affects body armor that is itself "sold or offered for sale" in interstate commerce. 18 U.S.C. § 921(a)(35). Thus, for example, homemade body armor or body armor produced intra-state would not be caught within the sweep of the statute. *Cf. Polanco*, 93 F.3d at 563 (holding that a jurisdictional element "requiring the government to prove that the defendant shipped, transported, or possessed a firearm in interstate commerce, or received a firearm that had been shipped or transported in interstate commerce . . .

insures, on a case-by-case basis, that a defendant's actions implicate interstate commerce to a constitutionally adequate degree.");

[7] We recognize that a jurisdictional hook is not always "a talisman that wards off constitutional challenges." *Patton*, 451 F.3d at 632. As we have explained,

> [t]he Supreme Court's decisions in *Lopez* and *Morrison* [ ], reject the view that a jurisdictional element, standing alone, serves to shield a statute from constitutional infirmities under the Commerce Clause. At most, the Court has noted that such an element "*may* establish that the enactment is in pursuance of Congress' regulation of interstate commerce," or that it may "lend support" to this conclusion.

*McCoy*, 323 F.3d at 1125 (quoting *Morrison*, 529 U.S. at 612-13). Consequently, when traveling in uncharted waters, we must consider the jurisdictional hook together with additional factors, such as congressional findings. *Id.*; *see also United States v. Kirk*, 105 F.3d 997 (5th Cir. 1997) (evenly divided court en banc) (upholding machine gun ban under third prong of *Lopez* rather than under a predecessor case to *Scarborough*). Here, we are confronted by the unique situation where a nearly identical jurisdictional hook has been blessed by the Supreme Court. Therefore, we need not engage in the careful parsing of post-*Lopez* case law that would otherwise be required. Rather, we recognize that this determination is controlled by the Court's analysis in *Scarborough*, and that "[u]ntil the Supreme Court tells us otherwise . . . we [must] follow *Scarborough* unwaveringly." *Cortes*, 299 F.3d at 1037 n.2.

## Conclusion

"Any doctrinal inconsistency between *Scarborough* and the Supreme Court's more recent decisions is not for this Court

to remedy." *Patton*, 451 F.3d at 636 (citing *Agostini v. Felton*, 521 U.S. 203, 237 (1997)). Nor do we think it prudent to create a circuit split on this important statutory issue that Congress views as having nationwide implications. Because we are bound by *Scarborough* and our own jurisprudence, we decline to embrace Alderman's challenge to § 931.

**AFFIRMED.**

---

PAEZ, Circuit Judge, dissenting:

I respectfully dissent.

In my view, felon-possession of body armor does not have a substantial effect on interstate commerce; its prohibition under 18 U.S.C. § 931 neither regulates commerce or any sort of economic enterprise nor regulates intrastate, non-economic activity that is essential to a comprehensive federal regulatory scheme. We should not overlook these substantial failings and nevertheless affirm Alderman's conviction under § 931 by enlarging the pre-*United States v. Lopez*[1] *precedent of Scarborough v. United States*, 431 U.S. 563 (1977), merely because a jurisdictional element is present. The majority's approach, in my view, effectively renders the Supreme Court's three-part Commerce Clause analysis superfluous and permits Congress, through the use of a jurisdictional element of any stripe, to "convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States." *Lopez*, 514 U.S. at 567.

Because my decision to part company with the majority is guided by the court's recent Commerce Clause jurisprudence and its treatment of jurisdictional elements, I turn first to the Court's recent Commerce Clause cases. I then address the

---

[1] 514 U.S. 549 (1995).

Court's decision in *Scarborough*, ultimately concluding that *Scarborough* does not foreclose Alderman's challenge to Congress's authority to regulate possession of body armor. And, because § 931 is not a valid exercise of Congress's power, I would reverse Alderman's conviction.

\*\*\*

In *Lopez*, the Court set forth the now-familiar three "broad categories" of activity that Congress may constitutionally regulate:

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce.

*Id.* at 558-59 (citations omitted); *Gonzales v. Raich*, 545 U.S. 1, 33-34 (2005) (Scalia, J., concurring) (noting that for over thirty years, "our cases have mechanically recited that the Commerce Clause permits congressional regulation of three categories"). As the majority acknowledges, the parties do not seriously argue that § 931 can be justified under either of the first two categories,[2] and I agree. Therefore, if intrastate pos-

---

[2]In *United States v. Patton*, 451 F.3d 615, 634 (10th Cir. 2006), the Tenth Circuit held that § 931 could not be justified as a valid exercise of the Commerce Clause under *any* of the three *Lopez* categories. The court explained that because the statute "prohibits the stationary and entirely intrastate act of possession" it is not directed at the movement of body armor through the channels of interstate commerce, nor can the statute be understood as regulating an instrumentality or "things in" commerce

session of an object can be regulated at all, it must be done within the third category of Congress's Commerce Clause authority.

The Supreme Court developed the third category of authority "to define the extent of Congress's power over purely *intra*state commercial activities that nonetheless have substantial *inter*state effects." *United States v. Robertson*, 514 U.S. 669, 671 (1995). A substantial effect is required because "[t]he regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *United States v. Morrison*, 529 U.S. 598, 618 (2000). Accordingly, whether Congress had a rational basis to find that the regulated activity, taken in the aggregate, would substantially affect interstate commerce should be the primary focus of our inquiry. *Raich*, 545 U.S. at 22.

In *Morrison*, the Supreme Court held that the Violence Against Women Act, 42 U.S.C. § 13981, was an invalid exercise of federal power under the Commerce Clause. 529 U.S. at 617. As the majority notes, the Supreme Court established a four-factor test for making that determination: (1) whether the statute regulates "activity [that] substantially affect[s] interstate commerce" "or any sort of economic enterprise;" (2) whether the statute contains any "express jurisdictional

---

because the statute "does not protect body armor while it is moving in interstate shipment [nor] is [it] directed at the use of body armor in ways that threaten or injure the instrumentalities of interstate commerce," nor does the statute substantially affect commerce. *Id.* at 621-22, 634. The court nevertheless, as the majority does here, proceeded to uphold § 931 as permissible on the basis of the Supreme Court's 1977 decision in *Scarborough* and Tenth Circuit precedent validating statutes that regulate felon possession of firearms. *Id.* at 634-36. I agree with *Patton's* conclusion that § 931 cannot be sustained under any of the three *Lopez* categories, but disagree, as I explain *infra*, with the *Patton* court and the majority that *Scarborough* mandates a fourth category of Commerce Clause analysis.

element which might limit its reach to a discrete set" of cases that "have an explicit connection with or effect on interstate commerce;" (3) whether the statute or "its legislative history contains express congressional findings regarding the effects [of the regulated activity] upon interstate commerce;" and (4) whether "the link between [the regulated activity] and a substantial effect on interstate commerce [is] attenuated." *Morrison*, 529 U.S. at 610-12 (quotation marks and brackets omitted); *see also United States v. McCoy*, 323 F.3d 1114, 1119 (9th Cir. 2003). We have since applied that test to a number of criminal statutes, including those with jurisdictional elements such as the one in § 931. *See, e.g.*, *United States v. Cortes*, 299 F.3d 1030, 1035-37 (9th Cir. 2002); *McCoy*, 323 F.3d at 1129-30. Because we view the first and fourth factors of the *Morrison* test—whether the statute regulates commerce or economic enterprise, and whether the link between the regulated activity and commerce is too attenuated —as the most important, I turn to those factors first. *See McCoy*, 323 F.3d at 1119.

1. **The possession prong of § 931 does not regulate commerce or economic activity, and any link between possession and commerce is highly attenuated.**

Although these factors are considered together, I first consider whether the statute regulates commerce or any sort of economic enterprise. In my view, it does not. Like the statute struck down in *Lopez*, § 931 is a "criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Lopez*, 514 U.S. at 561. We have never found that mere possession is, itself, an economic activity. *See United States v. Stewart (Stewart II)*, 451 F.3d 1071, 1073 (9th Cir. 2006) (stating that possession of machine guns is not an economic activity); *McCoy*, 323 F.3d at 1131 ("simple intrastate possession [of home-grown child pornography] is not, by itself, either commercial or economic in nature"). Nor is mere possession of an object consistent with activities the Supreme

Court has found to be commercial. *See, e.g.*, *Perez v. United States*, 402 U.S. 146, 154, 157 (1971) (loansharking); *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 276-77 (1981) (industrial mining).

Even where the regulated activity is not commercial, however, the regulation can still be justified as having a substantial and non-attenuated effect on commerce in two ways—either as a means of regulating the interstate market for body armor, as in § 931, *see Raich*, 545 U.S. at 18, or as controlling uses of that body armor that might affect interstate commerce, *see Morrison*, 529 U.S. at 612-15. Turning first to whether regulation of felon possession succeeds as a regulation of the interstate market for body armor, I conclude that it does not.

The Supreme Court's recent decision in *Raich* established that "Congress can regulate purely intrastate activity that is not itself 'commercial,' in that it is not produced for sale, if it concludes that failure to regulate that class of activity would *undercut the regulation of the interstate market* in that commodity." 545 U.S. at 17-18 (citing *Wickard v. Filburn*, 317 U.S. 111 (1942)) (emphasis added). In *Raich*, the Court contrasted the statute struck down in *Lopez*, which prohibited possession of a gun in a school zone, with the comprehensive regulatory scheme of the Controlled Substances Act ("CSA"), which the Court described as a "lengthy and detailed statute creating a comprehensive framework for regulating the production, distribution, and possession of five classes of 'controlled substances.' " 545 U.S. at 24. Even though the respondents in *Raich* possessed marijuana that was produced intrastate and for no commercial purpose, the Court determined that the activities regulated by the CSA—the "production, distribution, and consumption" of controlled substances —were indeed economic. *Id.* at 25. Further, in light of the "established, and lucrative, interstate market" for controlled substances, prohibiting non-commercial intrastate possession was "a rational . . . means of regulating" that market. *Id.* at 26; *cf. United States v. Adams*, 343 F.3d 1024, 1033 (9th Cir.

2003) ("the statute criminalizing possession of commercial child pornography *is* part of the larger congressional scheme to eradicate the market for child pornography").

Accordingly, when a federal statute criminalizes mere intrastate possession, we have considered whether that statute is part of a broader regulatory scheme. Indeed, we have held that Congress could criminalize possession of machine guns where those guns "are regulated by a detailed and comprehensive statutory regime." *Stewart II*, 451 F.3d at 1076. We have also determined that Congress could "stamp out" the market for child pornography by criminalizing the possession of such pornography where the "production, distribution, [and] receipt" was also regulated. *Adams*, 343 F.3d at 1032.

Here, however, there is no evidence that § 931's prohibition of felon possession of body armor was either itself "a general regulatory statute [that] bears a substantial relation to commerce," or an "essential part" of some other regulatory scheme. *Lopez*, 514 U.S. at 558, 561 (quotation marks and emphasis omitted). To the contrary, § 931 is like the statute struck down in *Lopez*: a "brief, single-subject statute making it a crime for [a felon] to possess [body armor]." *Raich*, 545 U.S. at 23; *see also id.* at 24 (quoting *Lopez*, 514 U.S. at 561) (" 'Section 922(q) is not an essential part of a larger regulation of economic activity . . . . It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce.' "). Further, it is unrelated to any broader attempt to control or suppress the market in body armor. Congress has not regulated the manufacture, distribution, sale, possession, or use of body armor. Moreover, the statute does not control *any* aspect of the commercial marketplace for body armor; it is perfectly legal, for example, to sell body armor to a felon or to buy body armor from a felon. The statute—which prohibits *felon* possession, ownership, and purchase—criminalizes certain conduct by felons rather than regulating

interstate commerce in body armor. Where it is perfectly legal to sell body armor to felons, and the entire legitimate market in body armor—manufacture, distribution, and sale—is untouched by § 931 or any related legislation, there is no rational basis for concluding that criminalizing felon possession would have a discernable, let alone substantial, effect on interstate commerce. Significantly, Congress itself estimated that the statute would effect fewer than ten cases per year. *See* H.R. Rep. No. 107-193, pt. 1, at 7 (2001).

Whereas the statute in *Wickard* was enacted primarily to control the market price of wheat, 317 U.S. at 115, and the statutes regulating machine guns in *Stewart II* and child pornography in *Adams* were part of broad regulatory frameworks whose objectives were comprehensive market suppression, § 931 is a stand-alone statute that is designed only to keep felons from possessing body armor. Accordingly, there is no rational basis here on which Congress could have concluded that federal regulation of intrastate felon possession of body armor is an essential part of effective federal control of the broader, interstate market.

Whether Congress may have been regulating felon possession as a means of controlling uses of body armor that might affect interstate commerce in a way that is "significant," and not "attenuated," must also be considered." *See Morrison*, 529 U.S. at 612-15. I recognize and am sensitive to Congress's concerns that possession of body armor by felons may facilitate criminal acts and that crime can have a substantial impact on the national economy. However, arguments about these concerns—that possession of firearms near schools and gender-motivated violence, respectively, could and did have significant effects on economic activity—were patently rejected by a majority of the Court over forceful dissents in both *Morrison* and *Lopez*. In *Morrison*, the Court emphasized that it "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at

617-18. Likewise, in *Lopez*, the Court specifically declined to "pile inference upon inference" to find that either the "costs of crime" or impacts on "national productivity" could affect commerce to a constitutionally adequate degree. 514 U.S. at 564, 567; *Morrison*, 529 U.S. at 615-18 (rejecting the argument that "Congress [could] regulate any crime as long as the nationwide, aggregated impact of that crime has substantial effects on employment, production, transit, or consumption" because "[t]he Constitution requires a distinction between what is truly national and what is truly local.").

Here, even when *Lopez*'s and *Morrison*'s instructions are read in the light most favorable to exercise of congressional power, any potential effect on commerce of Alderman's possession of body armor is both spare and particularly attenuated. The possession subject to regulation under § 931 need not be coupled with possession of a weapon or connected with the commission of a federal crime, circumstances which might fairly be said to substantially affect the national economy. In this case, Alderman's possession of body armor posed no danger; he was walking down a street, unarmed, his vest invisible beneath his shirt. His conduct had no adverse economic or commercial impact whatsoever and, in the absence of any further, affirmative criminal or other activity, it had no potential for such an impact. Even conceding that Alderman's possession of body armor might facilitate criminal conduct nonetheless, *Lopez* and *Morrison* patently reject the argument that because an object facilitates crime, possession of that object can be regulated under Congress's commerce power.

I would conclude, therefore, that felon possession of body armor is not part of a broader attempt to regulate the interstate market and that it does not have a substantial and unattenuated effect on interstate commerce.

### 2. The congressional findings accompanying § 931 do not demonstrate that possession substantially affects interstate commerce.

Congressional findings that address the national impact of the regulated activity in question can assist in determining whether that activity substantially affects interstate commerce. *Lopez*, 514 U.S. at 562-63. Their use is in enabling a court "to evaluate the legislative judgment that the activity in question substantially affected interstate commerce, even though no such substantial effect was visible to the naked eye." *Id.* at 563.

The relevant congressional findings here are limited. There are no preambulatory findings enacted as part of the statute, however the House Report contains findings as follows:

> (1) nationally, police officers and ordinary citizens are facing increased danger as criminals use more deadly weaponry, body armor, and other sophisticated assault gear;
>
> (2) crime at the local level is exacerbated by the interstate movement of body armor and other assault gear;
>
> (3) there is a traffic in body armor moving in or otherwise affecting interstate commerce, and existing Federal controls over such traffic do not adequately enable the States to control this traffic within their own borders through the exercise of their police power;
>
> (4) recent incidents, such as the murder of San Francisco Police Officer James Guelff by an assailant wearing 2 layers of body armor, a 1997 bank shoot out in north Hollywood, California, between police and 2 heavily armed suspects outfitted in body

armor, and the 1997 murder of Captain Chris McCurley of the Etowah County, Alabama Drug Task Force by a drug dealer shielded by protective body armor, demonstrate the serious threat to community safety posed by criminals who wear body armor during the commission of a violent crime . . . .

H.R. Rep. 107-193, pt. 1, at 2. Whether these findings support a rational basis for the position that possession of body armor substantially affects interstate commerce is not so clear. *See Raich*, 545 U.S. at 22.

First, the conclusion that "there is a traffic in body armor moving in or otherwise affecting interstate commerce" is an eminently reasonable one. H.R. Rep. 107-193, pt. 1, at 2. Like the court in *Patton*, I recognize that Congress found that "existing Federal controls over . . . traffic [in body armor] do not adequately enable the States to control this traffic," 451 F.3d at 630-31, but I fail to see how § 931 is responsive to that finding where it does nothing to limit the interstate movement of body armor. The regulation of felon possession is wholly intrastate. And, where Congress itself determined that the prohibition on possession, purchase, and ownership of body armor by felons "would probably affect fewer than 10 cases each year," H.R. Rep. 107-193, pt. 1, at 7, it is especially difficult to perceive how felon-possession of body armor substantially affects interstate traffic. At best, by federalizing traditional state crimes, the statute duplicates similar state prohibitions. *See Patton*, 451 F.3d at 631 n.7 (listing thirty-one states in which possession of body armor is regulated). At worst, it tampers with policy choices by the states in an area —police powers—in which states are sovereign.

Congress's conclusion that "crime at the local level is exacerbated by the interstate movement of body armor," H.R. Rep. 107-193, pt. 1, at 2, is likewise well-taken; however, in *Lopez*, in which guns were at issue, a similar concern did not establish that the prohibited possessions substantially affected

interstate commerce. In *Lopez*, the Court rejected the idea that Congress could rely on generalized "costs of crime" for the power to regulate "not only all violent crime, *but all activities that might lead to violent crime*, regardless of how tenuously they relate to interstate commerce." 514 U.S. at 564 (emphasis added). To the contrary, the Court required a close nexus between the criminalized conduct and interstate commerce. The Court explained that the absence of such a nexus raised grave federalism concerns because "the suppression of violent crime and the vindication of its victims" is quintessentially within the police power of the several states. *Morrison*, 529 U.S. at 618. Although Congress was concerned that "police officers and ordinary citizens are facing increased danger" as the result of felon-possession of body armor, H.R. Rep. 107-193, pt. 1, at 2, it is precisely this area that the Court has determined to be one of traditional state concern. Remaining faithful to this precedent, I cannot discern a rational basis on which Congress could have concluded that possession of body armor substantially affects interstate commerce.

I therefore turn to the remaining *Morrison* factor: whether there is a jurisdictional element that limits the reach of the possession prong of § 931 to a discrete set of cases that substantially affect interstate commerce. *Morrison*, 529 U.S. at 611-12.

### 3.　Section 931's jurisdictional element does not serve to render the possession prong of the statute a valid exercise of Congress's Commerce Clause authority.

A jurisdictional element, as the term has been used in and after *Lopez*, refers to a provision in a federal statute that requires the government to establish specific facts justifying the exercise of federal jurisdiction in connection with an individual application of the statute. *Lopez*, 514 U.S. at 561-62.

Here, the majority and the government point to § 931's jurisdictional element and conclude that because the govern-

ment must show that the body armor at issue in a particular case was sold or offered for sale in interstate commerce alone is sufficient to bring the regulated possession within the scope of Congress's authority. In particular, the majority holds that *Scarborough*—which preceded *Lopez* by two decades—controls the result in this case. As the majority explains, in *Scarborough*, the Court interpreted the predecessor statute to § 922(g) to require only that a firearm had previously traveled in interstate commerce in order to satisfy the nexus between possession and commerce. I do not believe that *Scarborough* controls the result here, and such a conclusion, in my view, is contrary to our precedent.

As we have explained,

> The Supreme Court's decisions in *Lopez* and *Morrison* . . . , reject the view that a jurisdictional element, standing alone, serves to shield a statute from constitutional infirmities under the Commerce Clause. At most, the Court has noted that such an element "*may* establish that the enactment is in pursuance of Congress' regulation of interstate commerce," or that it may "lend support" to this conclusion. *Morrison*, 529 U.S. at 612, 613, 120 S.Ct. 1740 (emphasis added). Thus, the "jurisdictional element" must be considered along with the other factors listed in *Morrison*.

*McCoy*, 323 F.3d at 1125 (noting that the Third and Seventh Circuits agree with that analysis).[3] Indeed, in *McCoy*, as well as *Cortes*, we conducted a substantial effects test "[f]ollowing the rubric outlined in *Lopez*, *Morrison*, and *Jones* [*v. United States*, 529 U.S. 848 (2000)]." *Cortes*, 299 F.3d at 1035; *McCoy*, 323 F.3d at 1119. Our analysis contemplated that

---

[3]*McCoy*, may be in tension with *Raich*, but because I cite *McCoy* for its application of *Morrison*, and not its holding, there is no need to address this tension here.

"[t]he purpose of a jurisdictional hook is to limit the reach of a particular statute to a discrete set of cases that substantially affect interstate commerce." *McCoy*, 323 F.3d at 1124. The presence of a jurisdictional element does not *ipse dixit* result in a constitutional exercise of Congress's Commerce Clause power.

In light of this precedent, I agree with the Tenth Circuit's observation in *Patton* that § 931's jurisdictional element, which "limits the definition of 'body armor' to any product sold or offered for sale, in interstate or foreign commerce, as personal protective body covering" "does not seriously limit the reach of the statute." 451 F.3d at 633.

> Nearly all body armor will meet that test. More important, there is no reason to think that possession of body armor that satisfies the jurisdictional hook has any greater effect on interstate commerce than possession of any other body armor . . . .
>
> Where Congress has chosen to allow production, distribution, and sale of body armor in interstate commerce . . . it is hard to understand why possession of armor that meets that description is more objectionable than any other.

*Id.* Or, put slightly differently, as in *McCoy*, the connection between the activity regulated and the jurisdictional element is attenuated—the jurisdictional element does not provide adequate support for the government's assertion of federal jurisdiction. This is the case here even though "the 'jurisdictional hook' in the statute and the item which affects interstate commerce are one and the same," *McCoy*, 323 F.3d at 1129, because the crux of the analysis is whether the jurisdictional element guarantees that the regulated possession substantially affects interstate commerce. Here, the possession at issue is, by statutory design, attenuated both from the interstate market in body armor and any use of that body armor during an activ-

ity that might affect interstate commerce. Consequently, the jurisdictional element does not serve its required purpose of limiting the statute to felon-possessions that have a direct and substantial affect on interstate commerce.

To the contrary, virtually every possession will fall within the sweep of the statute. The Supreme Court avoided precisely this result in *Jones*, 529 U.S. at 850-51. In *Jones*, the Court narrowly interpreted the jurisdictional element in the federal arson statute, 18 U.S.C. § 844(i), to avoid the "grave and doubtful constitutional questions" that would arise "were we to read § 844(i) to render the 'traditionally local criminal conduct' in which petitioner Jones engaged 'a matter for federal enforcement.' " *Id.* at 857-58. In particular, the Court expressed concern with the government's view that the home was "used in . . . activities affecting commerce" because the homeowner had mortgaged and insured the property through out-of-state entities, and the home received natural gas from interstate sources. *Id.* at 855 (quotation marks and brackets omitted). To read the statute as the government argued would have the constitutionally dubious result of "mak[ing] virtually every arson in the country a federal offense." *Id.* at 859. The Court's narrow construction of the jurisdictional element ensured that only arson crimes substantially affecting interstate commerce could be prosecuted under the statute. *Id.* at 858-59.

Here, it is impossible to narrowly interpret § 931's jurisdictional element, as the Court did in *Jones*, so that only possessions substantially affecting interstate commerce may be prosecuted. Congress specified that it intended to regulate the possession of "any product sold or offered for sale, in interstate or foreign commerce, as personal protective body covering." 18 U.S.C. § 921(a)(35). No plausible interpretation of § 931 cabins the statute's reach to a discrete set of cases. This is problematic, however, because as we have noted, "virtually all criminal [conduct] involve[s] the use of some object that has passed through interstate commerce." *McCoy* 323 F.3d at

1126 (quotation marks and citation omitted). Section 931's requirement that the government show that the body armor once traveled in interstate commerce does not ensure that the regulated conduct has the requisite substantial effect on interstate commerce.

In particular, § 931's jurisdictional element does nothing to prevent Congress from claiming the general police power that the Constitution "denied the National Government and reposed in the States." *Morrison*, 529 U.S. at 618.[4] While the use of a broad jurisdictional element does not invalidate a statute that otherwise "substantially affects . . . commerce," *Cortes*, 299 F.3d at 1036, such an element cannot save a statute that otherwise lacks the required effect.

Our decision in *Cortes* amply demonstrates this point. There, we conducted a substantial effects test under *Morrison* and found that "the carjacking statute was enacted as 'an essential part of a larger regulation of economic activity,' " *id.* at 1035 (quoting *Lopez*), and that because "carjacking does substantially affect interstate commerce," the fact that "a particular instance of carjacking may have a *de minimis* effect on interstate commerce is of no consequence." *Id.* at 1036. Turning only then to the jurisdictional element, we rejected Cortes's argument that the element was so broad as to invalidate the statute, reasoning that where "carjackings targeted by 28 U.S.C. § 2119 substantially affect interstate commerce" a minimal nexus "provides the necessary connection between each instance of carjacking covered by the statute and interstate commerce." *Id.* at 1037. In other words, the presence of

---

[4]*See also* Andrew St. Laurent, *Reconstituting* United States v. Lopez*: Another Look at Federal Criminal Law*, 31 Colum. J.L. & Soc. Probs. 61, 113 (1998) ("A purely nominal jurisdictional requirement, that some entity or object involved in the crime be drawn from interstate commerce, does nothing to prevent the shifting of [the federal/state] balance in favor of the federal government. As has been amply demonstrated, virtually all criminal actions in the United States involve the use of some object that has passed through interstate commerce.").

the jurisdictional element was a factor in the analysis that *followed* a substantially affects determination—it was not the sole reason for that determination.

Contrary to the majority's view, neither the Supreme Court's decision in *Scarborough* nor our court's treatment of *Scarborough* alters this analysis. *Scarborough* decided only a question of statutory interpretation about the predecessor statute to § 922(g). *Scarborough* held that—on a fair reading of that statute—only a minimal nexus with commerce was required to demonstrate that felon-possession of a firearm substantially affected commerce. 431 U.S. at 563-64, 566-67. *Lopez* itself neither stated nor implied more when the Court noted that because § 922(q) "ha[d] no express jurisdictional element which might limit its reach to a *discrete* set of firearm possessions," the statute could not be "sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce." *Lopez*, 514 U.S. at 561-62 (emphasis added).

After *Lopez*, we noted that *Scarborough* had not been overturned and rejected challenges to the constitutionality of § 922, holding that *Lopez* did not "alter [the] analysis," under *Scarborough*, and that "[s]ection 922(g)'s requirement that the firearm have been, at some time, in interstate commerce [remains] sufficient to establish its constitutionality." *United States v. Hanna*, 55 F.3d 1456, 1462 n.2 (9th Cir. 1995) (citing pre-*Lopez* precedent for the proposition that *Scarborough*'s minimal nexus standard applies to § 922(g)). Since then, as the majority emphasizes, we have routinely upheld the constitutionality of § 922 in cases that are the direct decedents of *Scarborough*, and therefore controlled by its precedent. This constitutional framework—considering first whether the statute at issue substantially affects interstate commerce and then considering the nature and scope of any jurisdictional element—does not disturb that settled precedent.

Further, I acknowledge that absent *en banc* or Supreme Court review, we must view § 922(g) as having a sufficient nexus to interstate commerce. *See United States v. Latu*, 479 F.3d 1153, 1156 (9th Cir. 2007). Indeed, after *Raich* and our decisions in *Stewart II* and *Latu*, the constitutionality of § 922 in all of its provisions is sound. As the court in *Latu* noted, the "*de minimis* character of each individual possession is irrelevant where . . . possession is regulated as part of a general regulatory statute that substantially relates to interstate commerce." *Id.* at 1156-57.

Such a regulatory scheme is not, however, what is at issue here. The plain differences in these various statutes confirm that the constitutionality of the prohibition on felon possession of firearms, as evidenced by *Scarborough*, is context-specific. That a minimal nexus was sufficient in one context does not make it sufficient in every other context. Were it otherwise, *Morrison*'s framework, *Jones*, and our non-§ 922(g) precedent would be either superfluous or incoherent. *Scarborough* may have the appearance of a trump, as the majority essentially holds, but a careful reading of post-*Scarborough* precedent and the Supreme Court's instructions in *Lopez* and its progeny clearly foreclose the notion that a statute is constitutional merely because a jurisdictional element or "hook" is present. Indeed, as *Lopez* makes plain, a jurisdictional element is a *subsidiary* element of the substantial effects analysis —it ensures that the government establishes specific facts justifying the exercise of federal jurisdiction in connection with any particular application of a statute like § 931. *Lopez*, 514 U.S. at 561. The jurisdiction element also in § 931 does not itself, by any fair reading, establish the requisite substantial interstate effects.

Although the majority here, like the Tenth Circuit in *Patton*, declares itself bound by *Scarborough,* this result is not compelled. Only where Supreme Court precedent has "direct application" in a case or "directly controls" should we "follow the case [and leave] to the Court the prerogative of overruling

its own decisions." *United States v. Grisel*, 488 F.3d 844, 847 (9th Cir. 2007) (en banc) (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)) (brackets omitted). Here, in addition to all the reasons discussed above, *Scarborough* does not control because constitutional limits—not an interpretation of § 922(g)—are the crux of the issue here. To the extent *Scarborough* has any constitutional dimension, it is, at best, *sub silentio*. I therefore cannot perceive how a holding that interprets a statute not at issue here "directly controls" the outcome of this case, especially where *Scarborough* has not "controlled" the outcome in any other non-§ 922 case that has involved a jurisdictional element.[5]

Notably, every court that has considered the constitutionality of § 931 has simply declared that body armor is "analogous" to, *United States v. Harkness*, 2007 WL 865855, at *4-5 (M.D. Fla. Mar. 21, 2007), the "same" as, *United States v. Marler*, 402 F. Supp. 2d 852, 854-55 (N.D. Ohio 2005), or "identical" to, *United States v. Kitsch*, 307 F. Supp. 2d 657, 660-61 (E.D. Pa. 2004), firearms without explaining why they "cannot be distinguished," *Patton*, 451 F.3d at 635-36. But our Commerce Clause analysis has never been fungible; it has been case-specific. Bald assertions, as well as *Patton's* presumption that Scarborough effectively creates a fourth category of Commerce Clause power, 451 F.3d at 634-36, should be viewed with skepticism.

In sum, where felon possession of body armor is intrastate, not an essential part of a comprehensive regulatory scheme, and not connected to criminal activity that might affect interstate commerce, there is "no rational basis for concluding that the possession of body armor prohibited by section 931 substantially affects interstate commerce." *Id.* at 634.

---

[5]Indeed, in *Cortes*, reference to *Scarborough* served only to "reinforce[ ] [the court's] conviction" that the sheer breadth of the jurisdictional element did not undermine its conclusion, on the basis of the other *Morrison* factors, that carjacking substantially affected interstate commerce. 299 F.3d at 1036.

\*\*\*

Section 931 did not require the government to show that Alderman's possession of body armor involved a commercial transaction, interstate travel, the commission of a crime, the possession of a firearm, or any other factor which would demonstrate that his possession substantially affected interstate commerce. *Scarborough* neither controls nor cures this deficiency. Congress's Commerce Clause powers are broad, but as the Supreme Court has specifically instructed us, they do have limits. In my view, the possession prong of § 931 exceeds those limits. Accordingly, I would reverse Alderman's conviction.