# SUPREME COURT OF THE UNITED STATES

## CEDRICK B. ALDERMAN *v.* UNITED STATES

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 09–1555.   Decided January 10, 2011

The petition for a writ of certiorari is denied.

JUSTICE THOMAS, with whom JUSTICE SCALIA joins except for footnote 2, dissenting from the denial of certiorari.

Today the Court tacitly accepts the nullification of our recent Commerce Clause jurisprudence.  Joining other Circuits, the Court of Appeals for the Ninth Circuit has decided that an "implic[it] assum[ption]" of constitutionality in a 33-year old statutory interpretation opinion "carve[s] out" a separate constitutional place for statutes like the one in this case and pre-empts a "careful parsing of post-*Lopez* case law."  565 F. 3d 641, 645, 647, 648 (2009) (citing *Scarborough* v. *United States*, 431 U. S. 563 (1977)).  That logic threatens the proper limits on Congress' commerce power and may allow Congress to exercise police powers that our Constitution reserves to the States.  I would grant certiorari.

I

Title 18 U. S. C. §931(a) makes it "unlawful for a person to purchase, own, or possess body armor, if that person has been convicted of a felony that is . . . a crime of violence."  James Guelff and Chris McCurley Body Armor Act of 2002, §11009(e)(2)(A), 116 Stat. 1821.  The statute defines "body armor" as "any product sold or offered for sale, in interstate or foreign commerce, as personal protective body covering intended to protect against gunfire."  18 U. S. C. §921(a)(35).

In October 2005, federal prosecutors indicted Cedrick

Alderman under §931.  Seattle police had stopped Alderman on suspicion of selling cocaine.  The officers found no cocaine but discovered that Alderman was wearing a bulletproof vest.  Although possession of the vest was legal under Washington state law, the elements of §931 were satisfied.  Alderman had been convicted of robbery in 1999, and the vest had been sold in interstate commerce three years earlier when the California manufacturer sold it to a distributor in Washington State.  565 F. 3d, at 644.  There were no allegations that Alderman had purchased the body armor from another State or ever carried it across state lines.

Alderman entered a conditional guilty plea and was sentenced to 18 months in prison.  He then appealed, arguing that §931 exceeded Congress' power under the Commerce Clause.  U. S. Const., Art. I, §8, cl. 3.  Over a dissent, a panel of the Ninth Circuit found §931 constitutional.  565 F. 3d, at 648; *ibid.* (Paez, J., dissenting).  The Ninth Circuit denied rehearing en banc, with four judges dissenting.  593 F. 3d 1141 (2010) (O'Scannlain, J., dissenting from denial of rehearing en banc).

## II

This Court has consistently recognized that the Constitution imposes real limits on federal power.  See *Gregory* v. *Ashcroft*, 501 U. S. 452, 457 (1991); *Marbury* v. *Madison*, 1 Cranch 137, 176 (1803) (opinion for the Court by Marshall, C. J.) ("The powers of the legislature are defined, and limited; and that those limits may not be mistaken, or forgotten, the constitution is written").  It follows from the enumeration of specific powers that there are boundaries to what the Federal Government may do.  See*, e.g.*, *Gibbons* v. *Ogden*, 9 Wheat. 1, 195 (1824) ("The enumeration presupposes something not enumerated . . .").  The Constitution "withhold[s] from Congress a plenary police power that would authorize enactment of every type

of legislation." *United States* v. *Lopez,* 514 U. S. 549, 566 (1995).

Recently we have endeavored to more sharply define and enforce limits on Congress' enumerated "[p]ower . . . [t]o regulate Commerce . . . among the several States." U. S. Const., Art. I, §8, cl. 3. *Lopez* marked the first time in half a century that this Court held that an Act of Congress exceeded its commerce power. We identified three categories of activity that Congress' commerce power authorizes it to regulate: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce; and (3) "activities having a substantial relation to interstate commerce . . . *i.e.,* those activities that substantially affect interstate commerce." 514 U. S., at 558–559. Emphasizing that we were unwilling to "convert congressional authority under the Commerce Clause to a general police power," *id.,* at 567, we struck down a ban on the possession of firearms within a 1,000-foot radius of schools because the statute did not regulate an activity that "substantially affect[ed]" interstate commerce, *id.,* at 561.

Five years after *Lopez*, we reaffirmed the "substantial effects" test in *United States* v. *Morrison*, 529 U. S. 598 (2000). We rejected Congress' attempt to "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce," and held unconstitutional the civil remedy portion of the Violence Against Women Act of 1994. *Id.,* at 617, 619. We could think of "no better example of the police power, which the Founders denied the National Government and reposed in the States." *Id.,* at 618.

## III

In upholding §931(a), the Ninth Circuit recognized that *Lopez* and *Morrison* had "significantly altered the landscape of congressional power under the Commerce Clause"

but held that it was guided "first and foremost" by *Scarborough*, *supra.* 565 F. 3d, at 643, 645. In *Scarborough*, this Court construed 18 U. S. C. App. §1202(a) (1970 ed.), which made it a crime for a felon to "receiv[e], posses[s], or transpor[t] in commerce or affecting commerce" any firearm. 431 U. S., at 564. The question in that case was whether the "statutorily required nexus between the possession of a firearm by a convicted felon and commerce" could be satisfied by evidence that the gun had once traveled in interstate commerce. *Ibid.* The Court held that such evidence was sufficient, noting that the legislative history suggested that Congress wished to assert "'its full Commerce Clause power.'" *Id.,* at 571. No party alleged that the statute exceeded Congress' authority, and the Court did not hold that the statute was constitutional. The Ninth Circuit concluded that *Scarborough* had "implicitly assumed the constitutionality of" §1202(a). 565 F. 3d, at 645.

The Ninth Circuit discussed how it might apply *Lopez* and *Morrison* "when traveling in uncharted waters" but ultimately concluded that it was "bound by *Scarborough*," in which this Court had "blessed" a "nearly identical jurisdictional hook." 565 F. 3d, at 648. Although it would "generally analyze cases in the framework of th[e] three *[Lopez]* categories," the Ninth Circuit determined that *Scarborough* had "carved out" a separate constitutional niche for statutes like §931(a) and §1202(a). 565 F. 3d, at 646–647. The Ninth Circuit thus upheld the statute without "engag[ing] in the careful parsing of post-*Lopez* case law that would otherwise be required." *Id.,* at 648. The court recognized a tension between *Scarborough* and *Lopez* but declined to "deviate from binding precedent." 565 F. 3d, at 646.

The dissent argued that the court had "effectively render[ed] the Supreme Court's three-part Commerce Clause analysis superfluous." *Id.,* at 648 (opinion of Paez, J.).

*Scarborough*, the dissent explained, "decided only a question of statutory interpretation." 565 F. 3d, at 656. Section 931 was, in the dissent's view, unconstitutional because applying *Lopez,* "felon-possession of body armor does not have a substantial effect on interstate commerce." 565 F. 3d*,* at 648.

The Ninth Circuit is not alone in its confusion about *Scarborough* and *Lopez.* The Tenth Circuit, also upholding §931 under *Scarborough*, has observed that "[l]ike our sister circuits, we see considerable tension between *Scarborough* and the three-category approach adopted by the Supreme Court in its recent Commerce Clause cases." *United States* v. *Patton*, 451 F. 3d 615, 636 (2006).[1] These Circuits have determined that "[a]ny doctrinal inconsistency between *Scarborough* and the Supreme Court's more recent decisions is not for [us] to remedy," *ibid.,* and have stated their intent to follow *Scarborough* "until the Supreme Court tells us otherwise." 565 F. 3d, at 648 (internal quotation marks and brackets omitted).

IV

It is difficult to imagine a better case for certiorari. *Scarborough*, as the lower courts have read it, cannot be reconciled with *Lopez* because it reduces the constitutional analysis to the mere identification of a jurisdictional hook like the one in §1202(a). See 593 F. 3d, at 1142 (O'Scannlain, J., dissenting from denial of rehearing en banc) ("The majority's opinion makes *Lopez* superfluous"). In fact, the Tenth Circuit has concluded that "[a]lthough the body armor statute does not fit within any of the *Lopez*

---

[1] Other Courts of Appeals, considering the constitutionality of different possession statutes, have applied *Scarborough* similarly, although the issue has divided some panels. See, *e.g., United States* v. *Bishop*, 66 F. 3d 569 (CA3 1995); *id.,* at 595–596 (Becker, J., concurring in part and dissenting in part); *United States* v. *Vasquez*, 611 F. 3d 325 (CA7 2010); *id.,* at 337 (Manion, J., dissenting).

categories, it is supported by the pre-*Lopez* precedent of *Scarborough.*" *Patton, supra,* at 634.

Recognizing the conflict between *Lopez* and their interpretation of *Scarborough*, the lower courts have cried out for guidance from this Court. See 565 F. 3d, at 643 ("[A]bsent the Supreme Court or our en banc court telling us otherwise . . . the felon-in-possession of body armor statute passes muster"); *Patton, supra,* at 636 ("We suspect the Supreme Court will revisit this issue in an appropriate case—maybe even this one"). This Court has a duty to defend the integrity of its precedents, and we should grant certiorari to affirm that *Lopez* provides the proper framework for a Commerce Clause analysis of this type.[2]

Further, the lower courts' reading of *Scarborough*, by trumping the *Lopez* framework, could very well remove any limit on the commerce power. The Ninth Circuit's interpretation of *Scarborough* seems to permit Congress to regulate or ban possession of any item that has ever been offered for sale or crossed state lines. Congress arguably could outlaw "the theft of a Hershey kiss from a corner store in Youngstown, Ohio, by a neighborhood juvenile on the basis that the candy once traveled . . . to the store from Hershey, Pennsylvania." *United States* v. *Bishop*, 66 F. 3d 569, 596 (CA3 1995) (Becker, J., concurring in part and dissenting in part). The Government actually conceded at oral argument in the Ninth Circuit that Congress could ban possession of french fries that have been offered for sale in interstate commerce.

Such an expansion of federal authority would trespass on traditional state police powers. See *Morrison*, 529 U. S., at 618; *Lopez*, 514 U. S., at 566; *id.,* at 584 (THOMAS,

---

[2] I adhere to my previously stated views on the proper scope of the Commerce Clause. See *United States* v. *Lopez*, 514 U. S. 549, 585 (1995) (concurring opinion); *United States* v. *Morrison*, 529 U. S. 598, 627 (2000) (same); *Gonzales* v. *Raich*, 545 U. S. 1, 57 (2005) (dissenting opinion).

J., concurring) ("[W]e *always* have rejected readings of the Commerce Clause and the scope of federal power that would permit Congress to exercise a police power . . ." (emphasis in original)).  Before Congress enacted §931, the majority of States already had employed their police powers to address body armor and its use or possession by criminals.  The States' different regimes range from laws requiring sales of body armor to be face-to-face, to laws increasing sentences for criminals who commit certain crimes with weapons and body armor, to no regulation at all.[3]  Cf. *Lopez, supra,* at 581 (KENNEDY, J., concurring) (noting that more than 40 States had already outlawed gun possession at or near schools, and observing that "the reserved powers of the States are sufficient to enact those measures").

\*     \*     \*

Fifteen years ago in *Lopez*, we took a significant step toward reaffirming this Court's commitment to proper constitutional limits on Congress' commerce power.  If the

---

[3]At least 31 States have some form of body armor regulation.  For instance, Maryland makes it a crime to wear body armor while committing certain crimes, Md. Crim. Law Code Ann. §4–106 (Lexis Supp. 2010), and also prohibits individuals who have been convicted of crimes of violence or drug crimes from possessing, owning, or using body armor, although individuals may be exempted through a permit system. §4–107 (Lexis 2002).  Virginia makes it a Class 4 felony to wear body armor while possessing a knife or firearm and committing a drug or violence offense.  Va. Code Ann. §18.2–287.2 (Lexis 2009).  North Carolina, by comparison, enhances all felony offenses by one class level if the offender wears or possesses body armor during the commission of the felony.  N. C. Gen. Stat. Ann. §15A–1340.16C (Lexis 2009).  The States also define "body armor" in many different ways.  See M. Puckett, Body Armor: A Survey of State & Federal Law (2d ed. 2004).  Montana, Hawaii, Alaska, Maine, Nebraska, and Rhode Island, among others, have elected not to regulate body armor at all.  See *United States* v. *Patton*, 451 F. 3d 615, 631, n. 7 (CA10 2006) (categorizing the various state schemes).

*Lopez* framework is to have any ongoing vitality, it is up to this Court to prevent it from being undermined by a 1977 precedent that does not squarely address the constitutional issue.  Lower courts have recognized this problem and asked us to grant certiorari.  I would do so.