[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10345

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 31, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-00001-RWG-GGB-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

IBNAWAAN SAFEEULLAH,
a.k.a. Antwan Strickland,
a.k.a. Bruce Ogelsby,
a.k.a. Ibnawaau Safeeullah,
a.k.a. Muhammad Safeeullah,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 31, 2012)

Before CARNES, PRYOR, and RIPPLE,* Circuit Judges.

PER CURIAM:

Ibnawaan Safeeullah was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and of possessing a stolen firearm in violation of 18 U.S.C. § 922(j). He appeals those convictions and his sentence, contending the district court violated his constitutional rights, gave erroneous jury instructions, and misapplied the Armed Career Criminal Act, 18 U.S.C. § 924(e).

I.

On December 9, 2009, agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives and officers of the Atlanta Police Department stopped a Jeep Cherokee after confirming that it was stolen. Two ATF agents approached the Jeep, removed Safeeullah from the passenger side, and handcuffed him. One agent testified that while doing so he noticed that the steering column was cracked, that the ignition switch was damaged, and that there were bits of broken glass in the front passenger seat. The agent also testified that he noticed a screwdriver in Safeeullah's right front pocket, that the damage to the Jeep was consistent with damage caused by a screwdriver, that screwdrivers are often used

_____

* Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

2

to cause that kind of damage, and that there was no key in the ignition.  The two ATF agents then took Safeeullah to a patrol car and frisked him.  They took the screwdriver from his front pocket and discovered wirecutters in his back pocket and a pistol in his waistband.  Removing those, they arrested Safeeullah.

The ATF agents then asked Safeeullah if he would talk to them, and he said that he would.  They read him the Miranda[1] warnings verbatim from a card.  He acknowledged that he understood his rights and said that he was willing to speak to the agents without an attorney present.  Safeeullah did not appear to be impaired in any way, and the agents did not threaten or intimidate him.  Nor did they promise him anything.  The interview lasted between five and ten minutes.

Atlanta police then transported Safeeullah to a "mobile command post" where the ATF agents again asked him if he would discuss his case.  Safeeullah said that he would.  The agents read him the Miranda warnings from a written form.  He then read the form aloud, acknowledged he understood it, and signed the waiver.  Like before, the agents did not threaten or intimidate him and did not promise him anything.  The interview lasted about twenty minutes.  Safeeullah never requested an attorney.

A federal grand jury indicted Safeeullah on one count of being a felon in

---

[1] See Miranda v. Arizona, 384 U.S. 386, 444–45, 86 S.Ct. 1602, 1612 (1966).

possession of a firearm and one count of knowingly possessing a stolen firearm. He filed a motion to suppress, arguing that the physical evidence was the result of an unlawful search, that his statements to the agents were fruits of the unlawful search, and that he had not voluntarily waived his right against self-incrimination. After a suppression hearing, a magistrate judge issued a report that recommended denying the suppression motion. The district court adopted that report.

Safeeullah contends the denial of his suppression motion was error. "A district court's denial of a motion to suppress evidence is reviewed as a mixed question of law and fact, with the rulings of law reviewed de novo and the findings of fact reviewed for clear error, in the light most favorable to the prevailing party." United States v. Perez, 661 F.3d 568, 581 (11th Cir. 2011) (quotation marks omitted). We find no clear error in the magistrate judge's factfindings, which the district court adopted.

Based on those findings, the ATF agents had probable cause to arrest Safeeullah before any search began because a prudent person would believe Safeeullah had committed or was committing an offense. See Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997). Thus, any search was a lawful search incident to arrest. See United States v. Robinson, 404 U.S. 218, 224, 94 S.Ct. 467, 471 (1973); see also Virginia v. Moore, 553 U.S. 164, 177, 128 S.Ct. 1598, 1607

4

(2008). It is irrelevant that the search took place before the arrest. See Rawlings v. Kentucky, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564 (1980); United States v. Goddard, 312 F.3d 1360, 1364 (11th Cir. 2001). Further, under the totality of the circumstances, we find no evidence that Safeeullah's waiver of his Miranda rights was involuntary. The motion to suppress was properly denied.

## II.

At trial Safeeullah wanted to call Ali Alatif, the driver of the Jeep, to testify, but Alatif indicated that he would assert his privilege against self-incrimination. The government did not offer Alatif immunity and Safeeullah did not call him as a witness. Safeeullah contends that the government's failure to either charge Alatif with a crime or to grant Alatif immunity deprived Safeeullah of exculpatory evidence in violation of his Sixth Amendment right to compulsory process, but he has not shown that Alatif would have provided exculpatory evidence for Safeeullah if he had testified.

"The Government has no duty under the Sixth Amendment or otherwise to immunize witnesses for the benefit of the defense. The Government's power to grant immunity is discretionary and the defendants have no right to subject its decision to judicial review." United States v. Ga. Waste Sys., Inc., 731 F.2d 1580, 1582 (11th Cir. 1984) (internal citations omitted). We have also recognized that

5

the government has "broad discretion as to whom to prosecute" and that "the decision to prosecute is particularly ill-suited to judicial review." United States v. Shaygan, 652 F.3d 1297, 1314 (11th Cir. 2011). Safeeullah has not established any violation of his Sixth Amendment or other rights in connection with the government's treatment of Alatif.

III.

Safeeullah also contends that two jury instructions were erroneous. We review de novo the legal correctness of a jury instruction while we review the phrasing of an instruction only for an abuse of discretion. United States v. Lee, 586 F.3d 859, 865 (11th Cir. 2009). But "[i]t is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006).

Safeeullah argues the district court should not have instructed the jury on joint possession because the government's only theory was that the pistol found in his waistband was in his direct possession. At the jury charge conference, the district court proposed an instruction that included definitions for sole and joint possession, and Safeeullah objected. The court then proposed an amendment to the instruction, and Safeeullah agreed to it. "[W]hen a party agrees with a court's proposed instructions, the doctrine of invited error applies, meaning that review is

6

waived even if plain error would result." United States v. Frank, 599 F.3d 1221, 1240 (11th Cir. 2010). If the instruction was wrong, Safeeullah invited the error.

Safeeullah also argues that the district court's instruction on constructive possession was an incorrect statement of the law and misleading. But the instruction the district court gave was identical to our pattern jury instruction on constructive possession, and we have upheld a substantially similar instruction. See United States v. Hastamorir, 881 F.2d 1551, 1559 (11th Cir. 1989). The constructive possession instruction was not error.

IV.

Finally, Safeeullah challenges the sentence imposed, contending that he should not have been sentenced under the ACCA and U.S.S.G. § 4B1.4. He argues that he lacked the required number of predicate offenses because his previous Georgia conviction for burglary was not a "violent felony" and his previous Georgia drug conviction was not a "serious drug offense." We review de novo whether a particular conviction qualifies as a predicate offense under the ACCA. See United States v. Robinson, 583 F.3d 1292, 1294 (11th Cir. 2009) (serious drug offense); United States v. James, 430 F.3d 1150, 1153 (11th Cir. 2005) (violent felony).

Courts are generally limited to a formal categorical approach when

determining whether an offense qualifies as an ACCA predicate offense, which means that they should look only to the fact of a conviction and the statutory definition of the offense, not to the particular circumstances underlying the conviction. See Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 2159 (1990); Robinson, 583 F.3d at 1295. However, where the statute defining the previous offense is broader than the generic ACCA definition of a predicate crime, or where the judgment of conviction and statute are ambiguous, courts may look to the defendant's underlying conviction to determine whether the defendant's specific crime fits the ACCA's generic definition. See United States v. Rainer, 616 F.3d 1212, 1215 (11th Cir. 2010) (broader definition); Robinson, 583 F.3d at 1295 n.3 (ambiguity). "This approach allows a court to determine which state statutory phrase was the basis for the conviction by consulting" so-called Shepard documents, which include charging documents. Rainer, 616 F.3d at 1215 (citing Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 1263 (2005)).

The generic ACCA burglary "contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with an intent to commit a crime." Taylor, 495 U.S. at 598, 110 S.Ct. at 2158. Georgia's burglary statute is broader than that. See Ga. Code Ann. § 16-7-1(a). The indictment that led to Safeeullah's burglary conviction, however, establishes

8

that he was convicted of unlawfully entering a public school building with the intent to commit a theft. Because that crime fits the generic definition of burglary, see Rainer, 616 F.3d at 1215–16, it qualifies as a predicate offense.

Similarly, the relevant Georgia drug statute is broader than the ACCA definition of "serious drug offense." Compare Ga. Code Ann. § 16-13-30(b), with 18 U.S.C. § 924(e)(A). The indictment that led to Safeeullah's Georgia drug conviction, however, establishes that he was convicted of unlawfully possessing cocaine with intent to distribute, which falls directly within the statutory definition of "serious drug offense." See 18 U.S.C. § 924(e)(A) (including "an offense under State law, involving . . . possessing with intent to manufacture or distribute"). That Safeeullah was only 17 years old at time of the of that earlier offense is irrelevant. Georgia law allowed an adult adjudication, he was convicted as an adult, and we look to state law about those matters. See United States v. Cure, 996 F.2d 1136, 1139–41 (11th Cir. 1993). It follows that Safeeullah's Georgia drug conviction is a qualifying predicate offense.[2]

---

[2] Safeeullah also asks us to revisit the "minimal nexus" test for proving the interstate commerce element of 18 U.S.C. § 922 in light of Justice Thomas' dissent from denial of a writ of certiorari in Alderman v. United States, __U.S. __, 131 S.Ct. 700 (2011). In that dissent, Justice Thomas suggests that Scarborough v. United States, 431 U.S. 563, 575, 97 S.Ct. 1963, 1969 (1977), is irreconcilable with United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624 (1995). But Lopez did not overrule Scarborough, and we have continued to apply the minimal nexus test post-Lopez. See, e.g., United States v. Wright, 607 F.3d 708, 715–16 (11th Cir. 2010); United States v. Pritchett, 327 F.3d 1183, 1185 (11th Cir. 2003). If the minimal nexus test is wrong, it is

**AFFIRMED**.

_____

for the Supreme Court to say so.