UNITED STATES of America,

v.

Pedro SERRANO, a/k/a/ "Louis Ortiz," Defendant.

16 CR 169 (WHP)

United States District Court, S.D. New York.

Signed 06/09/2016

288

David William Denton, Jr., United States Attorney's Office, New York, NY, for United States of America.

Annalisa Miron, Amy Gallicchio, Federal Defenders of New York, New York, NY, for Defendant.

## MEMORANDUM & ORDER

WILLIAM H. PAULEY III, United States District Judge:

On March 1, 2016, Defendant Pedro Serrano was charged in a two-count indictment with violating 18 U.S.C. § 922(g)(1), which, inter alia, prohibits felons from possessing ammunition shipped or transported in interstate commerce; and 18 U.S.C. § 931(a), which prohibits a felon convicted of a "crime of violence" from possessing body armor that was "sold or offered for sale, in interstate or foreign commerce." Count Two charged:

> On or about November 2, 2015, in the Southern District of New York and elsewhere, PEDRO SERRANO, a/k/a, "Louis Ortiz," the defendant, after having been convicted of a felony that is a crime of violence, knowingly did possess body armor, to wit, an American Body Armor bullet-resistant vest.

(Indictment, ECF No. 10, at 2.)

Defendant moves to dismiss Count Two because: (1) the Indictment did not charge § 931(a)'s "interstate commerce" element; (2) § 931(a) is an unconstitutional exercise of Congress's Commerce Clause authority; (3) § 931(a) is unconstitutionally vague; and (4) § 931(a) violates his Second Amendment rights. Count Two is dismissed for failure to allege the essential element of interstate commerce, without prejudice to the filing of an appropriate superseding indictment. Defendant's motions are otherwise denied.

## DISCUSSION

### I. Sufficiency of the Indictment

Defendant moves to dismiss Count Two of the Indictment because it fails to state an "essential element" of the charged crime: that the body armor allegedly possessed by Defendant was "sold or offered for sale" in interstate commerce.

 Under the Fifth and Sixth Amendments, "[a] criminal defendant is entitled to an indictment that states the essential elements of the charge against him." United States v. Pirro, 212 F.3d 86, 91 (2d Cir.2000) (citing Jones v. United States, 526 U.S. 227, 232, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)). When an indictment fails to contain an essential element, the Defendant suffers the risk that the "grand jury may not have understood the elements of the crime and the evidence necessary to support the indictment." Pirro, 212 F.3d at 95. "The timing of the defendant's objection is important to the level of scrutiny employed; a defendant who objects to the indictment before trial ... is entitled to a more exacting review of the indictment." Pirro, 212 F.3d at 92 (citing United States v. Goodwin, 141 F.3d 394, 401 (2d Cir.1997)).

The statute charged in Count Two, 18 U.S.C. § 931(a), provides that it is "unlawful for a person to purchase, own, or possess body armor, if that person has been convicted of a felony" that is a "crime of violence (as defined in section 16)." While the statute refers to the statutory provision defining "crime of violence," it does

not explain whether "body armor" is a defined term. Rather, the meaning of body armor, and the relevant jurisdictional element, must be found elsewhere, in 18 U.S.C. § 921(a)(35). That provision states that body armor means "personal protective body covering intended to protect against gunfire," but only when it was "sold or offered for sale, in interstate or foreign commerce." 18 U.S.C. § 921(a)(35).

Count One of the Indictment charges that Defendant "knowingly did possess in and affecting commerce ammunition ... which had previously been shipped and transported in interstate and foreign commerce." (Indictment at 1, ECF No. 10.) But Count Two states only that Defendant "knowingly did possess body armor," with no reference to any jurisdictional element found by the grand jury. (Indictment at 2, ECF No. 10.) While the Second Circuit has "consistently upheld indictments that 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime ... [t]he Supreme Court ... has recognized a limitation on this practice." Pirro, 212 F.3d at 93. That is, when a statutory definition "includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must states the species— it must descend to particulars." Pirro, 212 F.3d at 93 (quoting Russell v. United States, 369 U.S. 749, 765, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). And when "one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense." Pirro, 212 F.3d at 93 (citation omitted).

Here, because the essential jurisdictional element of § 931(a) is concealed in an unreferenced, subsidiary statutory provision, it is not sufficient for the grand jury's Indictment to "track" the "generic terms" of the overarching statute, and omit mention of the element. Accordingly, Count Two is dismissed for failure to plead the essential element of interstate commerce. This dismissal is without prejudice to an appropriate superseding indictment.

II. Commerce Clause Challenge

Defendant further argues that even if Count Two was pleaded sufficiently, § 931(a) would be an unconstitutional exercise of Congress's Commerce Clause power. Specifically, Defendant argues that prohibiting felons from possessing body armor that was "sold or offered for sale, in interstate or foreign commerce" implicates no traditional categories of commercial activity that can be regulated by Congress. Defendant adopts by reference the reasoning from Justice Thomas's dissent from a denial of certiorari in Alderman v. United States, 562 U.S. 1163, 131 S.Ct. 700, 178 L.Ed.2d 799 (2011), in which he suggested that § 931(a) may "trespass on traditional state police powers" and is in tension with United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and United States v. Morrison, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

In Lopez, the Court invalidated a provision of the Gun–Free School Zones Act of 1990 in which Congress criminalized "knowingly ... possess[ing] a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone" because the record revealed that Congress made no legislative findings that such firearm possession "substantially affected interstate commerce." Lopez, 514 U.S. at 551, 563, 115 S.Ct. 1624. However, in enacting the Violence Against Women Act of 1994, Congress had made various legislative findings that acts of gender-

motivated violence had a "substantial effect" on interstate commerce. Morrison, 529 U.S. at 614, 120 S.Ct. 1740. Nonetheless, the Morrison Court found that the mere existence of such findings was insufficient to establish that such an effect existed. Accordingly, the Court "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." Morrison, 529 U.S. at 617, 120 S.Ct. 1740.

However, in Lopez, the Court emphasized that the relevant statute contained "no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce," and noted that such an element would have limited the statute to a "discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." Lopez, 514 U.S. at 561, 115 S.Ct. 1624. Moreover, in Morrison, the Supreme Court observed that the relevant provision "contain[ed] no jurisdictional element," and that such an element would have supported the Government's contention that the statute was "sufficiently tied to interstate commerce." Morrison, 529 U.S. at 613, 120 S.Ct. 1740. The Court then cited with approval a criminal statute on gender-motivated violence that did include a jurisdictional element, which it observed had been "uniformly upheld ... as an appropriate exercise of Congress' Commerce Clause." Morrison, 529 U.S. at 659 n.5, 120 S.Ct. 1740.

■ The Second Circuit twice upheld federal firearms violations after Lopez and Morrison where the statute included a jurisdictional element requiring the Government "to provide evidence in each prosecution of a sufficient nexus between the charged offense and interstate or foreign commerce." United States v. Santiago, 238 F.3d 213, 216 (2d Cir.2001) (applying Morrison); see also United States v. Sorrentino, 72 F.3d 294, 296 (2d Cir.1995) (applying Lopez). Here, any superseding indictment charging a revised version of Count Two would also require specific proof that body armor in Defendant's possession was a "product sold or offered for sale, in interstate or foreign commerce." Accordingly, Santiago and Sorrentino compel a finding that 18 U.S.C. § 931(a) is a facially constitutional application of Congress's power under the Commerce Clause.[1] Any as-applied challenge to the evidence of interstate nexus in this case will be addressed by the evidence that the Government offers at trial.

### III. Vagueness Challenge

■ "Vagueness may invalidate a criminal law" when it "fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits" or if it "authorize[s] and even encourage[s] arbitrary and discriminatory enforcement." City of Chicago v. Morales, 527

---

1. Notably, other circuits have given less deference to such "jurisdictional hooks." See United States v. Patton, 451 F.3d 615, 633 (10th Cir.2006) ("A jurisdictional hook that restricts a statute to items that bear a trace of interstate commerce is no restriction at all." (quotation marks omitted)); United States v. Rodia, 194 F.3d 465, 473 (3d Cir.1999) (finding a jurisdictional element "useless" because it did not "adequately perform[ ] the function of guaranteeing that the ... regulated [activity] substantially affects interstate commerce."); see also United States v. Alderman, 565 F.3d 641, 648 (9th Cir.2009) ("The majority's approach, in my view, effectively renders the Supreme Court's three-part Commerce Clause analysis superfluous and permits Congress, through the use of a jurisdictional element of any stripe, to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States.") (Paez, J., dissenting).

U.S. 41, 55, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). Defendant argues that three portions of § 931(a) are unconstitutionally vague: (1) the term "crime of violence," (2) the definition of "body armor"; and (3) the phrase "sold or offered for sale."

As applied to Defendant, the term "crime of violence" is not vague. In Johnson v. United States, — U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), the Supreme Court concluded that the so-called "residual clause" of the Armed Career Criminal Act ("ACCA"), was unconstitutionally vague. The language in that clause parallels the residual clause in the statute that is used to define a "crime of violence" for purposes of § 931(a). See 18 U.S.C. § 16(b). However, Section 16 also includes a separate "force clause," under which an offense is a crime of violence if it "had as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). And Johnson notably excluded the more specific language of the ACCA's analogous "force clause" from its holding that the residual clause was vague. Johnson, 135 S.Ct. at 2563. Here, Defendant's prior conviction for Robbery in the First Degree qualifies as a "crime of violence" under Section 16(a)'s "force clause" because one inherent element of that conviction was the "immediate use of physical force" against another person. See N.Y. Penal Law § 160.00 ("Robbery is forcible stealing. A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person . . . .").

Nor is § 931(a)'s definition of "body armor" vague as applied to Defendant. The statute defines body armor as a "personal protective body covering designed to protect against gunfire, regardless of whether the product is to be worn alone or is sold as a complement to another product or garment." 18 U.S.C. § 921(a)(35). Here, Defendant could not reasonably be confused that the identified item is body armor, given that the label reads "American Body Armor and Equipment, Incorporated," describes its contents as "ballistic pads," and identifies the vest's ability to resist numerous types of ammunition. (See Gov't Opp. ECF No. 33, Ex. A.)

Finally, the phrase "sold or offered for sale[ ] in interstate or foreign commerce" is not vague. Whether a product was "sold" or "offered for sale" is readily understandable to the average person.

IV. Second Amendment Challenge

Finally, Defendant argues that the fact that § 931(a) prohibits a felon who has committed a "crime of violence" from possessing body armor effectively violates his Second Amendment right to keep and bear arms, relying on the Supreme Court's decision in District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). But even assuming that "body armor" is analogous to a firearm, Heller concluded that Second Amendment protections should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." Heller, 554 U.S. at 626, 128 S.Ct. 2783. Accordingly, Defendant's Second Amendment challenge is rejected.

CONCLUSION

Defendant's motion to dismiss Count Two is granted because the Indictment did not charge that the body armor allegedly possessed by Defendant was "sold or offered for sale, in interstate or foreign commerce." Defendant's motion is denied in all other respects. The Clerk of Court is di-

rected to close the motion pending at ECF No. 29.

SO ORDERED: